IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHEILA HUMPHREY *as Next Friend of Dallas Humphrey, Deceased, and on Behalf of His Estate*, <br><br> Plaintiff, <br><br> v. <br><br> BUKARI KWASI YOBONTA, et al., <br><br> Defendants. | NO. 3:19-cv-00782 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION

Pending before the Court are two motions for summary judgment. The first motion was filed by Defendant AIM Leasing Company (Doc. No. 24, "Defendant AIM's Motion"). Plaintiff responded to Defendant AIM's Motion. (Doc. No. 31). Defendant AIM replied. (Doc. No. 33). The second motion was filed jointly by Defendants Bukari Kwasi Yobonta and Thunder Logistics, Inc. (Doc. No. 27, "Joint Motion"), which Defendant AIM has effectively joined by adopting the arguments set forth therein. (Doc. No. 25 at 2). Plaintiff responded to the Joint Motion. (Doc. No. 32). Defendants replied. (Doc. No. 34). The motions are both ripe for review.

For the reasons discussed herein, the Court will grant the Joint Motion as to all Defendants. The Court will therefore deny Defendant AIM's Motion as moot.

## FACTUAL BACKGROUND[1]

---

[1] Unless otherwise noted, the facts in this section are (a) taken from facts in Plaintiff's Responses to Statements of Undisputed Facts (Doc. Nos. 31-1, 32-1); and (b) undisputed. Thus, the facts set forth here are either undisputed or specifically identified as disputed. The Court resolves all disputed facts in favor of Defendants for the reasons stated herein, primarily that Plaintiff has provided no citation to a material dispute of fact and provided no reason other than speculation for her disputes of fact.

1

On October 16, 2018, a two vehicle automobile accident occurred around 1:30 a.m. on Interstate 24 westbound in Davidson County, Tennessee, giving rise to this action. (Doc. No. 32-1 at ¶ 1). The collision occurred when Dallas Humphrey ("the deceased")'s car rear ended a trailer being towed by Defendant Yobonta. (*Id.* at ¶ 4).

At the time of the accident, the vehicle occupied by Defendant Yobonta was parked fully on the shoulder of an entrance ramp of Interstate 24 near the Old Hickory exit, which was illuminated by overhead lighting. (*Id.* at ¶¶ 5, 7). The trailer had red and white conspicuity tape on its rear and had rear underride protection. (*Id.* at ¶ 8). The headlamps of the deceased's vehicle were directed towards the rear of the trailer, illuminating the conspicuity tape.[2] (*Id.* at ¶ 9). The deceased was travelling westbound on the Interstate when he crossed lanes to the right, crossed a painted safety zone, crossed the entrance lane ramp, and travelled on to the right shoulder where he struck the parked trailer.[3] (*Id.* at ¶ 6).

The deceased was impaired and legally intoxicated at the time of the collision. (*Id.* at ¶ 17). First responders noted the strong odor of alcohol in the deceased's vehicle.[4] (*Id.* at ¶ 11). An autopsy later revealed the presence of alcohol in the amount of 300 mg/dL through a blood test of

---

[2] Defendants state without opposition that this "would have been" the case. As there is no reason to believe that Plaintiff's headlamps did not illuminate the conspicuity tape, the Court treats as undisputed the fact that the headlamps *were* pointed towards the rear of the trailer and that the conspicuity tape was illuminated.

[3] Plaintiff disputes this fact by stating that there is no evidence to support it. However, Defendants cite to their expert report in support of this fact, and Plaintiff presents no contravening evidence. Defendants note that their expert report would be admissible evidence under Fed. R. Evid. 701. *See e.g.*, *Dortch v. Fowler*, 588 F.3d 396, 405 (6th Cir. 2009) (discussing and affirming admission of police report); *Jama v. Boyd & Sons, Inc.*, No. 115CV01275STAEGB, 2017 WL 10059020, at *2 (W.D. Tenn. Nov. 21, 2017) (allowing testimony of accident reconstructionist). Therefore, the Court finds this fact to be undisputed for purposes of summary judgment.

[4] This fact is supported by the evidence entered in the record, though Plaintiff did not respond if the fact was disputed or not disputed. The Court will therefore treat it as undisputed.

the heart, and the presence of alcohol in the amount of 344 mg/dL through a vitreous fluid test. (*Id.* at ¶¶ 12-15). The deceased's blood alcohol content was determined to be .3 g/mL, and the legal limit in Tennessee is .08. (*Id.* at ¶¶ 16, 18).

Defendant Yobonta was an employee or agent of Defendant Thunder Logistics at the time of the collision. (*Id.* at ¶ 3). Defendant Thunder Logistics hired Defendant Yobonta on or about September 21, 2014. (*Id.* at ¶ 22). Defendant Yobonta was qualified to operate the vehicle on the date of the accident. (*Id.* at ¶ 21). Defendant Thunder Logistics performed the required driver qualification measures. (*Id.* at ¶ 23). On the date of the accident, Defendant Yobonta's driving record was clear back until at least September 21, 2011, with no convictions for moving traffic violations. (*Id.* at ¶¶ 24, 25).[5]

Defendant AIM is an Ohio Corporation that owns and leases tractor trailers to interstate carriers. (Doc. No. 31-1 at ¶ 1). Defendant AIM owned the tractor trailer that was involved in the accident at issue in this case. (*Id.* at ¶ 2). Defendant AIM had leased the tractor trailer to Defendant Thunder Logistics pursuant to an Equipment Leasing Agreement in November 2016. (*Id.* at ¶ 3). This lease was in effect at the time of the accident, and the terms of the lease provided that it was Defendant Thunder Logistics' duty and obligation to maintain the leased tractor trailer. (*Id.* at ¶¶ 4, 5). Defendant AIM had no relationship with Defendant Yobonta, and did not hire, train, or supervise him. (*Id.* at ¶ 7).

---

[5] Plaintiff disputes much of this paragraph. However, Plaintiff does not cite to any evidence in the record for her disputes as required by Fed. R. Civ. P. 56 and L.R. 56.01(c)(3). As will be discussed later in this opinion, Plaintiff has failed to put into the record any evidence beyond her unsupported assertions. Her unsupported assertions do not create a genuine dispute of material fact, and so the Court considers the statements recounted in this paragraph to be undisputed for purposes of summary judgment.

After its filing in Davidson County Circuit Court, this case was removed from state court to this Court. (Doc. No. 1). In the Complaint, Plaintiff brings counts for (1) negligence, and (2) negligent hiring, supervision, and training. (Doc. No. 1-2). The first count appears to be brought against all three defendants, and the second count appears to be brought solely against Defendants AIM and Thunder Logistics.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Anderson*, 477 U.S. at 248. A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Information Solutions, Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018). If the

4

summary judgment movant meets that burden, then in response the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 628.

A party asserting that a fact cannot be or genuinely is disputed—*i.e.*, a party seeking summary judgment and a party opposing summary judgment, respectively—must support the assertion by citing to materials in the record, including, but not limited to, depositions, documents, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). In reviewing a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party. *Tlapanco v. Elges*, 969 F.3d 638, 647 (6th Cir. 2020) (quoting *Anderson*, 477 U.S. at 248). Likewise, the court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Pittman*, 901 F.3d at 628. Credibility judgments and weighing of evidence are improper. *Hostettler v. College of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the non-moving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

On a motion for summary judgment, a party may object that the supporting materials specified by its opponent "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Upon such an objection, the proponent of the supporting material must show that the material is admissible as presented or explain how it could be presented in a form that would be admissible. *Thomas v. Haslam*, 303 F. Supp. 3d 585, 624 (M.D. Tenn. 2018);

5

Case 3:19-cv-00782   Document 42   Filed 03/01/21   Page 5 of 15 PageID #: 360

*Mangum v. Repp*, 2017 WL 57792 at **5 (6th Cir. Jan. 5, 2017) (citing Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment).

## DISCUSSION

The parties (and the Court) agree that Tennessee negligence law applies in this case. (Doc. No. 28 at 2-3). In Defendant AIM's Motion, Defendant AIM adopts the Joint Motion, but asserts alternatively that even if the Joint Motion should be denied, it is entitled to summary judgment under the Graves Amendment.[6] (Doc. No. 25). Plaintiff agrees that the arguments in the Joint Motion apply equally to Defendant AIM. (Doc. No. 31 at 2). Therefore, the Court will first address the Joint Motion.

In the Joint Motion, Defendants claim that summary judgment should be granted because (1) Plaintiff cannot establish causation, and (2) Plaintiff cannot establish negligent hiring, retention, or supervision.

---

[6] The Graves Amendment provides that:

> An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if—
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106(a).

A. <u>Negligence</u>

The Tennessee Supreme Court has explained what is required for a plaintiff to establish a negligence claim:

> In order to establish a prima facie claim of negligence, basically defined as the failure to exercise reasonable care, a plaintiff must establish the following essential elements: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause."

*Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 363 (Tenn. 2009) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995)). The Tennessee Supreme Court has also explained the relationship between actual and proximate cause:

> Causation, or cause in fact, means that the injury or harm would not have occurred "but for" the defendant's negligent conduct. *See Caldwell v. Ford Motor Co.*, 619 S.W.2d 534, 543 (Tenn.App.1981); *Wyatt v. Winnebago Industries, Inc.*, 566 S.W.2d 276, 280 (Tenn.App.1977). Once it is established that the defendant's negligent conduct was, in point of fact, the actual cause of the plaintiff's injury or harm, the focus then becomes whether the policy of the law will extend responsibility for that negligent conduct to the consequences that have occurred. As this Court stated in *Doe v. Linder Const. Co., Inc.*, 845 S.W.2d 173 (Tenn.1992), "legal responsibility must be limited to those causes which are so closely connected with the result and are of such significance that the law is justified in imposing liability. Some boundary must be set . . . ." *Doe*, 845 S.W.2d at 181 (quoting Prosser and Keeton, *The Law of Torts* 264 (5th ed. 1984)). Fixing this boundary of liability is the purpose underlying the element of proximate cause. Proximate cause
>
> > is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of the actor's conduct . . . . [T]he consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond. Any attempt to impose responsibility upon such a basis would result in infinite liability . . . .
>
> *Id.*
>
> Causation and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence. *Bradshaw*, 854 S.W.2d at 869; *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn.1991); *Smith v. Gore*, 728 S.W.2d 738, 749 (Tenn.1987). "Causation (or cause in fact) is a very different concept from that of proximate cause. Causation refers to the cause

7

> and effect relationship between the tortious conduct and the injury. The doctrine of proximate cause encompasses the whole panoply of rules that may deny liability for otherwise actionable causes of harm." King, *Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Injuries and Future Consequences*, 90 Yale L.J. 1353, 1355 n. 7 (1981). Thus, proximate cause, or legal cause, concerns a determination of whether legal liability should be imposed where cause in fact has been established. *McKellips v. Saint Francis Hosp.*, 741 P.2d 467 (Okl.1987). "Cause in fact, on the other hand, deals with the 'but for' consequences of an act. 'The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct.' " *Id.* at 470 (quoting Prosser and Keeton, *The Law of Torts* 266 (5th ed. 1984)).

*Kilpatrick v. Bryant*, 868 S.W.2d 594, 598 (Tenn. 1993). Additionally, there is a three-pronged test in Tennessee for proximate causation:

> (1) the tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and (2) there is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and (3) the harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991). Though questions of causation are usually reserved for the jury, these questions can be determined at the summary judgment stage when the evidence is undisputed, and the plaintiff has shown no dispute as to a material fact. *E.g.*, *id.* ("[P]roximate causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome"); *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1072 (6th Cir. 1993) ("[T]he district court properly determined that the plaintiffs failed to demonstrate the existence of a genuine factual dispute regarding causation. The plaintiffs bear the burden of establishing causation."); *In re Aredia & Zometa Prod. Liab. Litig.*, No. 3:06-MD-1760, 2009 WL 2497286, at *1 (M.D. Tenn. Aug. 13, 2009) (granting summary judgment on various tort claims, including negligence, when plaintiff presented no admissible evidence of causation).

Defendants argue that no conduct of Defendants was the but-for or proximate cause of the accident.[7] (Doc. No. 28 at 4). Focusing much of their brief on the lack of proximate cause, Defendants primarily rely on the case *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399 (6th Cir. 2004). There, the Sixth Circuit affirmed a lower court ruling that plaintiffs had not shown that the defendant's actions were the proximate cause of the accident because a rig (*i.e.*, tractor trailer) parked completely off the interstate was plainly visible. *Id.* at 403. "Consequently, the court concluded that [the deceased driver's] actions in leaving the travel lanes and crashing into [the deceased driver's] rig were the proximate cause of plaintiffs' losses." *Id.* The Court relied on a Tennessee state court case which instructed that the proper question in a negligence case where a wreck involves a standing vehicle is: "Did the driver running into the standing vehicle see it in time to enable him, by use of due care, to avoid the collision? If he did not, his negligence is merely a contributory cause; if he did, his negligence is the proximate cause." *Carney v. Goodman*, 38 Tenn. App. 55, 63–64, 270 S.W.2d 572, 576 (1954). Though foreseeability of an intervening or superseding act usually presents a jury question, the *Carney* court adopted a special rule in standing

---

[7] Additionally, as an affirmative defense, Defendants argue that the deceased was guilty of negligence per se. (Doc. No. 28 at 8). "In this state the violation of a penal statute is negligence per se, and will sustain an action for civil wrong, where it affirmatively appears that the violation was the proximate cause of the injury for which recovery is sought." *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn. 1981). To support this assertion, Defendants rely on the undisputed fact that the deceased's blood alcohol level was almost four times the legal limit. (Doc. No. 32-1 at ¶¶ 16-19); *see also* Tenn. Code Ann. § 55-10-411 ("[E]vidence that there was, at the time alleged, eight-hundredths of one percent (0.08%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of [Tennessee's driving under the influence statute].").

"The party moving for summary judgment must affirmatively negate an essential element of the non-moving party's claim, or conclusively establish an affirmative defense." *Duncan v. Lloyd*, No. M2004-01054-COA-R3CV, 2005 WL 1996624, at *2 (Tenn. Ct. App. Aug. 18, 2005). Since the Court has found that Defendants have shown that an essential element of Plaintiff's claim (proximate cause) is not present, the Court does not need to determine the applicability of negligence per se as an affirmative defense.

vehicle cases, which the district court applied in *Kellner*, explaining that "'[u]nder this rule it is unforeseeable as a matter of law someone would drive into a plainly visible standing vehicle.' The *Carney* opinion noted that '[t]he operator of a vehicle that crashes into a vehicle negligently left standing in an unsuitable stopping place provides the proximate cause of any resulting injuries if she could see the standing vehicle in time to avoid a collision.'" *Kellner*, 359 F.3d at 404 (quoting from and discussing the district court opinion). As a result, the Sixth Circuit ultimately concluded that: "the district court correctly determined it was not foreseeable, within the meaning of Tennessee law, that [the deceased driver], with an extended unobstructed view of [the relevant] tractor-trailer, would leave three travel lanes of interstate and strike the rig that was parked completely within the emergency breakdown lane . . . this Court concludes that . . . as a matter of law [the deceased driver's] actions provided the proximate cause of plaintiffs' losses and, therefore, affirms the district court's grant of summary judgment." *Id.* at 407-08.

Like *Kellner*, Defendants have shown the Court undisputed facts that the deceased could plainly see the rig (*i.e.*, the rig was plainly visible to a driver approaching the rig)[8] before impact and that the deceased crossed multiple lanes of traffic, a safety zone, and an entrance ramp lane before colliding with the trailer on the shoulder. (Doc. No. 32-1 at ¶¶ 5-9). Defendants have also shown that it is undisputed that the deceased was intoxicated at the time of the accident. (*Id.* at ¶ 17).

---

[8] Plaintiff disputes this, calling it "pure speculation" and claiming that "[w]e cannot purport to know what was 'clearly visible' to [the deceased] because he is no longer here." (Doc. No. 32-1 at 3). Plaintiff's position here is without merit. It may be that we do not know what the deceased actually saw (especially in his inebriated state). But we can, on the current record, determine what the deceased *could* have seen, *i.e.*, determine what was able to be seen, *i.e.*, determine what was *visible*. And that is what matters in this context.

Plaintiff provides the Court with no evidence of a genuine dispute of material fact. In her Response to the Joint Motion, Plaintiff claims that "summary judgment is improper because genuine dispute of material fact exist in this case." (Doc. No. 31 at 1). However, Plaintiff provides no support for any fact in her Response that she claims constitutes a material dispute of fact. Plaintiff provided no additional statement of undisputed facts nor submitted any documents into the record for this Court to consider with the Motions. As noted above, Plaintiff additionally cited to no documents when responding to the few facts she purports to dispute in the Statements of Undisputed Fact.

Fed. R. Civ. P. 56 lays out the rules for showing a genuine dispute of material fact when deciding a motion for summary judgment:

> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact . . .
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

The Middle District of Tennessee additionally has a local rule which provides that, when responding to a statement of facts, the party must demonstrate that the fact is disputed with "specific citation to the record." L.R. 56.01(c)(3). It is not the Court's job "to root through the record not unlike a pig in search of truffles to uncover any grain of evidence that might support the position of a party that chose to otherwise sit on its hands." *Penn-Daniels, LLC v. Daniels*, No. 07-1282, 2010 WL 431888, at *3 (C.D. Ill. Jan. 28, 2010) (citing *Casna v. City of Loves Park*, 574

11

F.3d 420, 424 (7th Cir. 2009)); *see also Emerson v. Norvartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (noting that "judges are not like pigs, hunting for truffles" that might be buried in the record).

The Sixth Circuit has explained that:

in order to survive a summary-judgment motion, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and the "mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to demonstrate a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018). Once the moving party has met its burden of identifying parts of the record that show a lack of dispute of material facts, "the party opposing the motion then may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989)). "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).

Plaintiff states that Defendant Yobonta's various actions show that he was the proximate cause of the accident because: (1) he was illegally parked, (2) he took a nap (instead of stopping for something more reasonable, like making an emergency stop), (3) there were safe and available other options for him to park, (4) it would have been reasonable to move the vehicle to another location, (5) his 12 years of experience should have allowed him to foresee that he was susceptible to being hit, and (6) he did not place orange triangle warning devices behind his vehicle as required

by state and federal regulation. (Doc. No. 32 at 2-5).[9] Plaintiff characterizes these facts as "undisputed," but provides no citation to where any of the facts can be found on the record. Plaintiff also states that it is "a well established industry standard that drivers of tractor-trailers are not to park in the 'recovery lane,' except in emergency situations, because it encourages accidents." (*Id.* at 3). Plaintiff does provide a citation for this statement, indicating that the Court should look to the "Lewgrill attached report." (*Id.*). However, there were no documents attached to the Response, and Plaintiff provides the Court with no further information on where the Court can find this report in the record. The Court is aware of no place where this report was entered into the record.

Therefore, the Court finds that none of Plaintiff's factual arguments in her Response raise a dispute of material fact. In contrast, Defendants have presented the Court with a well-supported Motion, indicating that the deceased's crash into a visible parked vehicle while intoxicated was the sole cause of his accident and that there is no proximate cause linking Defendants to the accident. As described, Plaintiff has come forward with no evidence that shows a dispute of material fact, other than her unsupported assertions and statements. Therefore, Defendants are entitled to summary judgment, as was the case in *Kellner*.

The Court therefore will grant Defendants' Joint Motion as it pertains to Plaintiff's negligence claim.

---

[9] The Court understands that Defendant Yobonta's choices here may have been far from ideal and been a but-for cause of the accident. But this does not save Plaintiff's negligence claim, because, as noted herein, Defendants have nevertheless shown that there is no genuine issue of material fact as to proximate cause and that they are entitled to judgment on the negligence claim as a matter of law based on the lack of proximate cause.

13

Case 3:19-cv-00782   Document 42   Filed 03/01/21   Page 13 of 15 PageID #: 368

B. Negligent hiring, supervision, and training

Under Tennessee law, negligent hiring, supervision, and training claims require a plaintiff to establish the elements of a negligence claim, plus the additional element that the employer knew of the employee's unfitness for the job. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 755 (6th Cir. 2014); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 767 (M.D. Tenn. 2019), *case dismissed*, No. 19-5369, 2019 WL 5079251 (6th Cir. Sept. 18, 2019). Additionally, for a negligent hiring claim, three elements are necessary for recovery: "(1) evidence of unfitness for a particular job, (2) evidence that the applicant for employment, if hired, would pose an unreasonable risk to others, and (3) evidence that the prospective employer knew or should have known that the historical criminality of the applicant would likely be repetitive." *Holliday v. Epperson*, No. 1:02-CV-1030-T, 2003 WL 23407496, at *4 (W.D. Tenn. Aug. 26, 2003) (cleaned up and citation omitted).

Defendants argue that Plaintiff has not made out a negligence claim, that Defendants have put into the record undisputed evidence that Defendant Yobonta was qualified (and so Defendants could therefore not have had knowledge that he was unqualified), and that Plaintiff has shown no dispute of material fact. (Doc. No. 28 at 10; Doc. No. 34 at 4-5). Defendants emphasize that it is undisputed that Defendant Yobonta had a valid license to operate a commercial motor vehicle the day of the accident and had a clean driving record. (Doc. 34 at 4-5; Doc. No. 29-1).

In addition to not having made out a negligence claim (which is required), Plaintiff has submitted no evidence regarding Defendant Thunder Logistics and AIM's training of Defendant Yobonta (or lack thereof), that Defendant Yobanta was unfit, or that they had knowledge of such unfitness. Plaintiff claims that the corporate Defendants should have known Defendant Yobonta was unfit for his job for several reasons: (1) they kept "haphazard and incomplete" personnel records, (2) his driving record indicates that his license was suspended and/or revoked three times

14

from 2011 to 2014, (3) Defendant Thunder Logistics employed him as a driver for several months after his license was initially revoked, (4) the first revocation ended his relationship with Defendant Thunder Logistics in May 2011, before he later was reemployed by Defendant Thunder Logistics when his license was reinstated, and (5) Plaintiff claims that this evidence shows that the accident could have been prevented by Defendant Thunder Logistics not rehiring him. (*Id.* at 6-7). Though Plaintiff indicates that she received some of this information from Defendant Yobonta's interrogatory responses and makes a passing reference to Defendant Thunder Logistics' personnel records, Plaintiff has again provided no citation or documentation for the Court. (*Id.*). As with the negligence claim, Plaintiff has not shown the Court a genuine dispute of material fact in response to what is a well-supported summary judgment motion presented by Defendants.

Therefore, the Court will grant summary judgment for Defendants on Plaintiff's claim for negligent hiring, supervision, and training. Because the Court will grant summary judgment as to all three Defendants based on the arguments contained in the Joint Motion, the Court does not need to additionally rule on Defendant AIM's separate Motion invoking the Graves Amendment as a defense.

## **CONCLUSION**

For the reasons discussed above, Defendant's Joint Motion (Doc. No. 27) will be granted. Defendant AIM's Motion (Doc. No. 24) will be denied as moot.

An appropriate order will be entered.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE